**William Solis VARGAS, Plaintiff,**

v.

**Arnold JAGO, et al., Defendants.**

**No. C–1–83–962.**

United States District Court, S.D. Ohio, W.D.

June 10, 1986.

**426**

William Solis Vargas, pro se.

Frederick C. Schoch, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## OPINION AND ORDER

SPIEGEL, District Judge:

Before the Court today are two matters that relate to the instant prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. As explained below, defendants' motion to reconsider Order Reopening Case is DENIED, plaintiff's objection to the Magistrate's Report and Recommendation is OVERRULED, the Report and Recommendation of the Magistrate that the action be dismissed is ADOPTED, and the instant case is hereby DISMISSED.

On December 6, 1985, absent objection from plaintiff, we adopted the Report and Recommendation of the Honorable J. Vincent Aug, Jr., that plaintiff's action be dismissed because it was filed untimely (doc. 12), on which the Clerk entered judgment (doc. 13). However, on January 14, 1986, we agreed to reopen the case because "plaintiff advised the Court of a series of events that ha[d] befallen him that we believe excuse[d] his failure for not filing an objection to the Magistrate's Report and Recommendation." *See* doc. 15. In said Order, we agreed to allow plaintiff the opportunity to file an objection, but directed that plaintiff "should address specifically the statute of limitations issue raised by the Magistrate." *Id.* Plaintiff has filed an objection (doc. 19), to which defendant Jago has filed a response (doc. 20). We will address the merits of their respective briefs momentarily, but one "procedural" matter necessitates discussion first.

■ On January 21, 1986, defendants moved this Court (doc. 17) to reconsider our Order Reopening Case, stating that they never were served with the letter upon which we based our January 14 decision to reopen. Thereafter, we directed the Clerk to send defendants not only a copy of the January 8 letter received, but also a copy of a letter from plaintiff that subsequently was received. *See* doc. 22. Moreover, we granted defendants leave "to make any response they think necessary." *Id.* Defendants did filed a pleading (doc. 23), in

which their counsel maintains, in essence, that the excuses that plaintiff proffers for failure to respond to the Magistrate's Report and Recommendation are inadequate. No authority is supplied for defendants' position, and, on balance, we decline to adopt same. It is for the Court to decide what is a "sufficient basis" to reopen a case and we do not believe we abuse our discretion in allowing plaintiff in January, 1986 to explain why he failed to respond to a Report and Recommendation of the Magistrate that was issued in late October, 1985. Plaintiff's reasons appeared legitimate to the Court, and, in light of the lenient eye with which we must view the papers of a *pro se* litigant, were acceptable. Thus, defendants' motion to reconsider our Order Reopening Case is hereby DENIED. We now turn to the merits of plaintiff's objection to the Magistrate's Report and Recommendation.

As previously mentioned, we permitted plaintiff to file an objection out of time with one caveat: he was required to "address specifically the statute of limitations issue raised by the Magistrate." *See* doc. 15. Briefly, the Magistrate reported that plaintiff alleges that four guards assaulted him in July, 1974, and are responsible for his current injuries; however, because plaintiff waited nearly nine years to file suit, he "r[a]n afoul of the principle set forth in *Wilson, et al. v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) that state personal injury statute [sic] of limitations should apply in these situations."[1] *See* doc. 10. Very simply, plaintiff's response to the timeliness issue is that the statute of limitations is tolled as to an individual in his position—that is, an incarcerated individual. As authority, he

cites *Austin v. Brammer,* 555 F.2d 142 (6th Cir.1977) and *Perdue v. Handelman,* 68 Ohio App.2d 240, 429 N.E.2d 165 (1980), as well as Ohio Rev.Code § 2305.16.

Defendant counters with a three-pronged attack: (1) plaintiff's objection is not timely; (2) section 2305.16 does not apply to the instant facts; and (3) defendant Jago is entitled to judgment based on laches. Because we already have indicated our rejection of defendant's first ground, we turn to his second: does Ohio Rev.Code § 2305.16 apply to the case at hand?

It is clear that Ohio law will be determinative. *See Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980) (federal courts must apply not only the analogous state statute of limitations to a litigant's federal constitutional claims, but also the statute's rule for tolling its statute of limitations). And, at first blush, the language of section 2305.16 appears to be applicable:

> Unless otherwise specially provided in sections 2305.04 to 2305.14, inclusive, and sections 1302.98 and 1304.29 of the Revised Code, *if a person entitled to bring any action mentioned* in such sections, unless for penalty or forfeiture, *is, at the time the cause of action accrues,* within the age of minority, of unsound mind, or *imprisoned, such person may bring it within the respective times limited by such sections, after such disability is removed.* When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.

Ohio Rev.Code § 2305.16 (emphasis added). What little Sixth Circuit case law we could find, however, seems to suggest that application of the disability tolling provision is

---

[1]. The Magistrate's Report continued, stating that the applicable statute of limitations was two years, citing to Ohio Rev.Code § 2305.10. His Report was handed down prior to the Sixth Circuit's pronouncement in *Milligan v. Hazard,* 777 F.2d 340, 344 (6th Cir.1985), that actions grounded on section 1983 should be governed by the one-year limitation set forth in Ohio Rev.Code § 2305.11, which covered, among others, actions for assault and battery. That the Ohio General Assembly has amended section

2305.11 only to remove assault and battery from its scope and has enacted section 2305.111, also a one-year statute of limitations, to govern assault and battery is of no moment to the analysis herein. Moreover, because plaintiff waited nearly nine years to file suit, whether the applicable statute of limitations is two years as opposed to one year likewise is of no relevance. Either way, plaintiff's suit is untimely and thus barred.

not appropriate. As we understand plaintiff's position, he contends that the fact of his imprisonment, in and of itself, permits tolling. Such a position has been rejected soundly by one of our district court colleagues, whose opinion was affirmed by our parent circuit. *See Campbell v. Guy,* 520 F.Supp. 53, 55 (E.D.Mich.1981), *aff'd,* 711 F.2d 1055 (6th Cir.1983), *cert. denied,* 464 U.S. 1051, 104 S.Ct. 731, 79 L.Ed.2d 190 (1984). In *Campbell,* Judge Cook opined, in accordance with *Austin v. Brammer,* 555 F.2d 142, 144 (6th Cir.1977),[2] that "to determine if Plaintiff can justifiably claim that he has been under a disability which would invoke the application of a tolling statute, it is necessary to evaluate *all* of the pertinent and relevant circumstances surrounding the issue." 520 F.Supp. at 55 (emphasis added). Relevant to Judge Cook's decision was the fact that the particular plaintiff involved had filed a total of nineteen lawsuits with the court; accordingly, because plaintiff was well informed of his legal options under section 1983 and had experienced no roadblocks in reaching federal court, the judge found that the state tolling statute was inconsistent with federal policy and would not be applied.

*Campbell,* however, was decided prior to *Hawkins v. Justin,* 109 Mich.App. 743, 311 N.W.2d 465 (1981), wherein the Michigan Court of Appeals held that, notwithstanding the fact that prisoners today have considerably more access to the courts, the Michigan tolling provision nonetheless continues to apply. The *Hawkins* court plainly was impressed by the fact that the Michigan legislature, in 1972, recognized the "changing circumstances of prisoners" yet made no revisions to the statute in that regard:

> The Legislature still could have determined rationally that prisoners are more restricted than ordinary citizens and thus in need of the special protection afforded by the statute. The Legislature reasonably could have found that, notwithstanding the ability of prisoners to obtain legal counsel and have access to the judicial process, they still have restraints imposed by their confinement which places them at a disadvantage compared to ordinary citizens.

109 Mich.App. at 748–49, 311 N.W.2d at 467. Strictly speaking the *Hawkins* case asked the Michigan Court of Appeals to decide whether the tolling provision, as it relates to prisoners, was unconstitutional as a denial of equal protection. *Id.* at 745, 311 N.W.2d at 466. Its facts did not involve, as did those in *Campbell* and the instant case, a prisoner suing one of his incarcerators for an alleged violation of constitutional rights. Therefore, whether the *Campbell* court would have ruled as it did had the case been decided post-*Hawkins* is an open question. *See Covington v. Winger,* 562 F.Supp. 115 (W.D.Mich. 1983), *aff'd on other grounds,* 746 F.2d 1475 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1764, 84 L.Ed.2d 826 (1985).

Perhaps the safest course we can assume is to take our cue from the above-cited cases to examine what the Ohio legislators have stated and what the Ohio courts have decided regarding Ohio's tolling provision. *See also Stephan v. Dowdle,* 733 F.2d 642 (9th Cir.1984). As with all statutes in Ohio, however, no formal legislative history exists and the courts essentially have been silent.[3] But because Ohio's tolling provi-

---

**2.** The *Austin* case really is not helpful to plaintiff herein. Plaintiff Austin brought a section 1983 suit, alleging perjury, against the officers who testified in the trial that resulted in his incarceration. The Sixth Circuit reversed the district court's implicit conclusion that the tolling statute would not apply when "the disability of imprisonment did not exist at the time of the accrual of the cause of action, but rather only took place after the defendant had been sentenced following his conviction." 555 F.2d at 413. Obviously no such issue is present in the instant case.

**3.** Plaintiff's citation to *Perdue v. Handelman,* 68 Ohio App.2d 240, 429 N.E.2d 165 (1980) is of no assistance to him. That case involved a suit for malpractice against the attorneys who defended plaintiff therein against the criminal charges on which he was tried and convicted and for which he eventually was sent to prison. The Court of Appeals for Franklin County did opine that the fact of plaintiff's imprisonment per se was sufficient to invoke the tolling provision and that the fact that plaintiff had commenced "numerous" other actions in various courts "was irrelevant."

sion is similar to those enacted in other states, to recite a general policy behind enactment of such legislation is adequate. Basically, it was thought long ago that a convicted person was civilly dead, and thus under a legal disability to bring suit. *See* Annot., 77 A.L.R.3d 735, 749 (1977).

■ Without question, Ohio's tolling provision is an aged statute, with its most recent version listing an effective date of 1965. Of interest to us, however, is the General Assembly's comment on a prisoner's disability with respect to actions against the State of Ohio as permitted by the Court of Claims Act, Ohio Rev.Code §§ 2743.01–.72:

> Civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties. *The period of limitations shall be tolled pursuant to section 2305.16 of the Revised Code, except there shall be no tolling during imprisonment unless the imprisoned person is of unsound mind.*

Ohio Rev.Code § 2743.16 (emphasis added). Section 2743.16 is of recent vintage and makes clear, we think, that the General Assembly does not consider imprisonment *per se* to be a disability in all cases. And, in a broad sense, suits filed against the state in the Court of Claims are of a similar ilk to suits filed against state officers under section 1983 in the federal courts. Thus we will conclude, for purposes of section 1983 suits brought by prisoner over the condition(s) of their confinement, that the fact of incarceration, in and of itself, is not enough to toll the relevant statute of limitations. As plaintiff herein has not maintained that he is of unsound mind, we do not believe he should enjoy benefit of the tolling provision.

■ *Tomanio* directs that we follow Ohio's tolling rule unless it is "inconsistent" with the policies underlying section 1983. 446 U.S. at 487, 100 S.Ct. at 1798. Assuming the General Assembly would decline to modify section 2305.16 to agree with section 2743.16, on balance we would conclude that the *per se* tolling rule is inconsistent with federal policy and should not be applied. It has long been this Court's opinion that the filing of section 1983 suits by prisoners serves a rehabilitative function, acting as a "safety valve," as it were, to relieve some of the tremendous pressure that builds in any captor/captive situation. By giving due consideration to the suits filed in which deprivations of civil rights are alleged, we hope to engender in those convicted and imprisoned a sense of respect for the law, not an easy task given the jaundiced eye with which most prisoners observe those in legal authority. The Supreme Court has held that one of the principal policies embodied in section 1983 is deterrence. *Id.* at 488, 100 S.Ct. at 1797. We cannot help but believe that, in order to effect the rehabilitative purpose described above, as well as to deter prison officials from misconduct, quick resolution of disputes is vital. Promptness is even more important, we think, when a prisoner is complaining that his current incarcerators are violating, or have violated, his civil rights. To allow a prisoner one year after his release to bring his section 1983 suit neither would effect deterrence as to the alleged offender, nor rehabilitation as to the alleged victim. Thus, so long as the state system erects no barriers to the federal courts, we regard application of the state disability tolling statute to be "inconsistent" with federal law.

68 Ohio App.2d at 241–42, 429 N.E.2d at 166–67. However, the policies attendant to section 1983, as explained below in the body of this Opinion and Order, do not come into play in a malpractice suit. Further, we are not bound by the opinion of one appellate court in the state system, particularly when we have not been presented with any material that would indicate that the state high court would so rule. *See generally West v. A.T. & T. Co.,* 311 U.S. 223, 227, 61 S.Ct. 179, 181, 85 L.Ed. 139 (1940) (quoted in *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967)).

**430**

Our check with the Clerk for the United States District Court, Southern District of Ohio, Western Division, reveals that plaintiff Vargas has no other pending cases before this Court. Defendant Jago states in the body of his memorandum in response to plaintiff's objection to the instant Report and Recommendation, however, that plaintiff has filed, with the Eastern Division of this Court, at least three civil rights actions subsequent to the alleged 1974 incident. Our six years' experience on the Bench, as well as our observation of the number of prisoner civil rights cases filed in the Southern District of Ohio, has taught us that prisoners incarcerated at Lucasville (plaintiff's formerly assigned institution) and Marion (plaintiff's current assigned institution) have no trouble bringing lawsuits for redress of alleged violations of their constitutional rights.[4] Moreover, this Court goes to great care to arrange for telephone conferences and transportation to trial to afford prisoners bringing meritorious suits an opportunity to bring their grievances to the courtroom.

Accordingly, we conclude that plaintiff's argument concerning the applicability of the state statutory tolling provision is not well-taken.[5] Therefore, after *de novo* review, we hereby accept the Report and Recommendation of the Magistrate and adopt same as our final judgment herein.

SO ORDERED.

---

4. For example, the Clerk furnished us with statistics that indicated that, for the period from 5/1/85–4/30/86, a total of 305 cases were filed in the Southern District of Ohio, 105 of which were filed in the Western Division at Cincinnati.

5. In so deciding, we are persuaded by defendant Jago's second argument. Thus, we have no need to reach, and make no ruling on, his third argument.