David A. JOHNSON, Plaintiff,

v.

Trooper D. PIKE, Defendant.

No. C85–1754–A.

United States District Court,
N.D. Ohio, E.D.

Dec. 19, 1985.

W. Love II, Akron, Ohio, for plaintiff.

William J. Steele, Asst. Atty. Gen., Columbus, Ohio, for defendant.

## ORDER

BELL, District Judge.

This matter is before the court on defendant's motion for summary judgment on plaintiff's civil rights claim brought pursuant to 42 U.S.C. § 1983. Plaintiff has responded in opposition to this motion.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that as a matter of law, it is entitled to summary judgment. In reviewing a motion for summary judgment, a court must consider the pleadings, related documents and evidence and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1980); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979); *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Board of Ed. Cincinnati v. Department of H.E.W.*, 532 F.2d 1070 (6th Cir.1976).

The following factual summary is drawn from plaintiff's depositional testimony. *See* Deposition of David A. Johnson attached to Defendant's Motion for Summary Judgment. Plaintiff spent the evening of October 18, 1983 at Bob's Lake Bar in the Portage Lakes area of Akron, Ohio. Plaintiff consumed a number of beers before leaving that establishment at approximately 1:00 A.M. on October 1, 1983, together with several other persons who had been at the bar. He and Danny Ralston left on motorcycles while the others followed in an automobile, all apparently on their way to a party.

At least an hour later, plaintiff's Harley-Davidson 1380 c.c. motorcycle ran out of fuel. He left his motorcycle behind a restaurant and got into the automobile that had been following him in order to look for an open gas station. Eventually he located a gas station, purchased fuel and returned to the restaurant where his motorcycle was parked. He thereafter engaged in conversation with individuals in the automobile for an undetermined amount of time and then proceeded alone.

Plaintiff left the restaurant location, returned the gas can he borrowed from the gas station and then decided to go home. At approximately 4:00 A.M. on October 29, 1983, plaintiff passed defendant's Ohio State Patrol cruiser. *See* Affidavit of Den-

nis R. Pike at ¶ 2 and Deposition of David A. Johnson at 15–16, 24. Plaintiff was traveling at approximately sixty miles per hour in a zone he knew was posted at forty-five miles per hour. Observing the excessive speed with which plaintiff was traveling, defendant turned his cruiser around, activated its red flashing lights and undertook pursuit.

Plaintiff realized immediately that he was the subject of defendant's pursuit but did not stop. Instead, he led defendant on a high speed chase covering between ten and fifteen miles. He turned off his headlight on several occasions during the pursuit in an effort to elude defendant. In addition, he purposely drove around a roadblock which had been established by the Summit County Sheriff's Department at an intersection in his path. Plaintiff sought to avoid being stopped because he had been drinking and, although he had a valid license at the time, had previously been convicted at least twice of driving while under the influence.

While traveling at least eighty miles an hour and realizing defendant was still following him, plaintiff turned to go up an entrance ramp to an expressway. Even though he slowed down considerably as he began to enter the ramp, his motorcycle hit some gravel and went out from underneath him. Plaintiff then fell to the ground with the still running motorcycle resting on his right leg and his hands still on the handlebars.

Defendant Pike promptly blocked the path of the motorcycle with his cruiser, and advancing toward plaintiff, ordered him to stop. Plaintiff responded that he was trying to get the motorcycle off of his leg. At that point, defendant grabbed Johnson from behind, jerking him into the left side of the motorcycle. This action by defendant pulled plaintiff's hands free from the handlebars. With the motorcycle still running and plaintiff's hands off the clutch control, the motorcycle jumped out from underneath both men. Plaintiff experienced immediate pain to his right hand. Defendant kept his hold on plaintiff as they were thrown to the ground until defendant positioned plaintiff stomach down and placed his knee in plaintiff's back. In that position, defendant handcuffed plaintiff. The total time that elapsed from when plaintiff lost control of his motorcycle at the base of the entrance ramp until he was handcuffed was, at the most, a half a minute.

Johnson told Pike as he was being handcuffed that something was wrong with his hand. Defendant did not respond but moments later, when other law enforcement officers arrived, plaintiff told them there was something wet on his back. Upon examination it was observed that plaintiff's thumb and forefinger were missing. The handcuffs were then removed and plaintiff was taken to the hospital. Medical personnel were on the scene approximately fifteen minutes after plaintiff's injury was discovered. He sustained no other physical injuries.

To establish a claim under section 1983, there are two jurisdictional prerequisites. Plaintiff must have been deprived of rights, privileges or immunities secured by the Constitution and laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1970). In addition, it must be alleged that the defendant was acting under color of law when he committed these constitutional deprivations. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Defendant does not dispute that he was acting under color of law at all times during the incident above summarized. He contends, however, that he is entitled to summary judgment because there is no material issue of fact that his actions did not deprive plaintiff of any constitutional right.

■ Plaintiff alleges that defendant's use of excessive force in arresting him deprived him of his due process rights. Complaint at ¶ 3 and 4. While the use of

excessive force may be considered a constitutional deprivation under some circumstances, not every injury wrongfully inflicted by a state officer rises to that level. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981). Specifically, the Civil Rights Act does not provide a remedy for state law tort violations. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1970).

In the recent case of *Wilson v. Beebe*, 770 F.2d 578, 579 (6th Cir.1985) (en banc) the Sixth Circuit Court of Appeals summarized the developing law in this area. The rule found by that court to have emerged in establishing due process violations provides:

> [T]hat due process claims for injuries inflicted under color of state law may proceed either upon the theory that a deprivation has occurred without procedural due process or that there has been a substantive due process violation; that is, either the official conduct shocks the conscience as in *Rochin* [*v. People of California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ], or infringes a specific constitutional guarantee, as in *Monroe v. Pape* [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ].

*Id.* at 583.

As the *Wilson v. Beebe* analysis is applicable to the case before this court, a brief summary of the facts of that case is worthy of inclusion. The court there stated that:

> [W]hile investigating a breaking and entering report [Michigan state police officer] Beebe encountered Wilson walking along a dark rural road. Beebe knew from a radio report that guns and ammunition had been taken during the burglary. Beebe was alone in his patrol car when he spotted Wilson who fit the description of the suspect. Beebe made several attempts to summon other officers, but was unsuccessful. Beebe ordered Wilson to walk to the patrol car where he conducted a frisk and found no weapons. While holding his cocked revolver in one hand, Beebe was attempt-

ing to handcuff Wilson when his revolver discharged. The magistrate found that all four of Beebe's fingers were wrapped around the handle of the pistol, with his thumb overlapping the fingers; his index finger was not in the trigger area. While he found that Beebe did not intend to fire the gun the magistrate also found that Beebe acted contrary to his training as a Michigan State Police Department Officer in cocking his revolver during the arrest and handcuffing of Wilson and that this conduct was negligent.

*Id.* at 581. Wilson sued Beebe under 42 U.S.C. § 1983 for damages and under a pendant state claim of negligence. The magistrate before whom the case was tried determined that Wilson's complaint failed to state a claim upon which relief could be granted under § 1983 based on the decision of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Recovery was allowed, however, on the pendant negligence claim. In its eventual affirmance of this result, the Sixth Circuit Court of Appeals delineated the differences between conduct which reaches constitutional dimensions from conduct which merely constitutes a tort. *See Wilson v. Beebe*, 770 F.2d at 581–587. Both procedural and substantive due process analysis was covered because Wilson, as the case with plaintiff in this cause, did not specify the exact nature of the alleged violation.

### I. PROCEDURAL DUE PROCESS

In analyzing whether a procedural due process claim had been shown, the Sixth Circuit discussed at length the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which limited the reach of § 1983 in the context of procedural due process. The *Parratt* court instructed that when a due process claim involves a deprivation of property, the first inquiry is whether the state provides an adequate tort remedy. *Id.* at 537, 101 S.Ct. at 1914. If the state tort remedy is deemed adequate, the deprivation is not "without due process of law." *Id.*

The *Parratt* court dealt only with the deprivation of property by the negligent random and unauthorized acts of state officials. *Wilson v. Beebe*, 770 F.2d at 578. A more recent case, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982), limited *Parratt* to this type of random conduct by state officials and found that it does not apply to deprivations of property under established state procedures without adequate predeprivation procedural safeguards. The *Parratt* decision was expanded to include intentional deprivations of property in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), on the theory that the state cannot anticipate either negligent or intentional conduct which is random and unauthorized for the purpose of providing predeprivation process.

In *Wilson v. Beebe*, the Sixth Circuit Court of Appeals addressed the issue of whether the *Parratt* rationale should be extended to deprivations of liberty interests protected by the fourteenth amendment. The court found that *Parratt* applies equally to deprivations of liberty interests if two inquiries are addressed: first, was the conduct random and unauthorized rather than pursuant to established state procedures; and second, if the conduct was random and incapable of anticipation by the state, is there an adequate postdeprivation proceeding which satisfies the requirements of procedural due process. *Wilson v. Beebe*, 770 F.2d at 584.

The *Wilson* court found that Beebe's conduct in discharging his weapon was in fact random, unauthorized and could not be predicted. Wilson was successful on his negligence claim against Beebe which the court found to be a postdeprivation remedy which was adequate to satisfy the requirements of procedural due process. *Id.* at 584. Therefore, a procedural due process claim was found not to exist.

■ The facts before this court compel the same result. Defendant Pike approached plaintiff who was still on his bike after a high speed chase. He physically restrained plaintiff and during the process plaintiff's fingers were severed. The entire incident took approximately thirty seconds.

At most, defendant's conduct could be considered a negligent deprivation of plaintiff's liberty. It could not be anticipated that, during the act of restraining plaintiff under these facts, his fingers would be severed. Thus, there are no steps which could have been taken to prevent the injury. The first test of *Parratt* is thus met.

The second test to be satisfied is whether Ohio provides an adequate postdeprivation remedy. Defendant asserts that this test is satisfied by the Ohio Revised Code § 2743.02(A)(1) (Pages 1981), which waives the state's eleventh amendment immunity to the extent that plaintiff may proceed against the state, defendant's employer, for damages in the Court of Claims. This postdeprivation remedy must be deemed adequate for purposes of the procedural due process requirements of the constitution.

Having found that defendant's acts were random and unauthorized, and that the state provides an adequate postdeprivation remedy for this conduct, plaintiff may not maintain a cause of action pursuant to § 1983 for a claim of procedural due process. Summary judgment is hereby entered in favor of the defendant on that claim.

## II. SUBSTANTIVE DUE PROCESS

■ As previously noted, the plaintiff's claim must also be analyzed to determine whether a substantive due process deprivation has been asserted. There are two prongs of substantive due process analysis. First, plaintiff may show that a specific constitutional guarantee other than the due process clause of the fourteenth amendment has been violated. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In the case before this court, no specific constitutional guarantee has been

alleged or argued. Thus, plaintiff's claim may not rest on this prong.

Second, plaintiff may establish a substantive due process claim even in the absence of specific constitutional guarantee if he can show that the official act of which he complains "may not take place no matter what procedural protections accompany them." *Wilson v. Beebe*, 770 F.2d at 586 (quoting *Hudson v. Palmer*, 468 U.S. at —— – —— n. 4, 104 S.Ct. at 3197 n. 4, 82 L.Ed.2d at 412–13 n. 4 (1984) (separate opinion of Stevens, J.)). This prong encompasses claims in which law enforcement officers apply undue force in dealing with detainees. *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (The court applied the *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), "shocks the conscience" standard to a § 1983 case.). In order to establish a substantive due process claim of this type, however, an intentional rather than a negligent act is required. *Wilson v. Beebe*, 770 F.2d at 586.

In *Johnson v. Glick*, the following specific factors were enunciated for determining whether an officer's use of force was excessive so as to constitute a substantive due process violation:

> [T]he need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033. These factors are all related to the purposeful infliction on injury. *Wilson v. Beebe*, 770 F.2d at 586.

Under the facts before this court, while it may be said that the plaintiff's loss of fingers is indeed shocking, defendant's conduct (the focus of inquiry here) was not intended to cause harm and can only be found to have negligently caused plaintiff's injury. Even if defendant's conduct could be called intentional, the *Johnson v. Glick* factors could not be satisfied to establish a substantive due process violation through the excessive use of force. The force applied in this case was not unreasonable in view of the circumstances and was not in any way directed at causing harm but merely restraint. When defendant came upon the scene after a ten to fifteen mile high speed chase, plaintiff was still on his motorcycle with its motor running. It was not unreasonable to physically restrain plaintiff. The entire sequence from defendant's arrival to handcuffing plaintiff took approximately thirty seconds. This fact alone attests to defendant's focus as quick restraint rather than causing harm. The plaintiff's claim under this prong of substantive due process can also not be met.

Accordingly, defendant's motion for summary judgment is granted and this cause dismissed.

IT IS SO ORDERED.