*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER SCHULMEYER,

        Claimant-Appellee,

and

MEIJER GREAT LAKES LIMITED
PARTNERSHIP,

        Respondent-Appellee,

v

LABOR AND ECONOMIC OPPORTUNITY
DEPARTMENT OF/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellant.

FOR PUBLICATION
February 13, 2025
11:27 AM

No. 368792
Jackson Circuit Court
LC No. 2023-000502-AE

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Appellant, the Labor and Economic Opportunity Department of/Unemployment Insurance
Agency (UIA), appeals by leave granted[1] the trial court order affirming the Unemployment
Insurance Appeals Commission (UIAC)[2] decision that determined that appellee Christopher

---

[1] *Schulmeyer v Meijer Great Lakes Ltd Partnership*, unpublished order of the Court of Appeals,
entered May 20, 2024 (Docket No. 368792).

[2] The duties of the UIAC were previously exercised by the Michigan Compensation Appellate
Commission (MCAC). The UIAC was created by the Governor's Executive Order 2019-13, which
among other things transferred the authority of the MCAC with respect to unemployment appeals
to the UIAC. Because the applicable statutes continue to refer to the MCAC and have not been
updated to reflect the creation of the UIAC, we will use both names interchangeably.

Schulmeyer is monetarily eligible for unemployment insurance benefits. For the reasons stated in this opinion, we reverse and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

On July 18, 2022, Schulmeyer filed a claim for unemployment benefits. Thereafter, the UIA issued a "monetary determination" stating that he was "monetarily ineligible" to receive unemployment benefits "because [he] did not earn enough wages during [his] base period" and did "not meet the monetary requirements to establish a claim." Schulmeyer requested a redetermination, but the UIA again determined that he was unable to establish a claim of unemployment benefits because he did "not meet the monetary requirements."

Schulmeyer appealed the redetermination to an administrative law judge (ALJ). The UIA did not appear for the hearing and Schulmeyer was the only witness. Following the hearing, he faxed the ALJ several paystubs reflecting wages that he was paid by his employer in 2022. Based upon the paystubs, the ALJ determined that Schulmeyer was monetarily eligible for unemployment benefits, and, consequently, it reversed the UIA's determination. The ALJ found that:

> Schulmeyer filed a claim for unemployment benefits on July 18, 2022. The Monetary Redetermination dated July 21, 2022, found that [he] had base period wages from the involved Employer of $3,136.62 in Q1 2022 and no other base period wages. [Schulmeyer] has provided check stubs showing year-to-date (YTD) income of $3,643.54 for Q1 of 2022 (Exhibit 1) and YTD income of $10,839.15 as of the end of Q2 of 2022 (Exhibit 2).

> * * *

> Based on Exhibit 1 and Exhibit 2, [Schulmeyer] had income of $3,643.54 for Q1 of 2022 and $7,195.61 for Q2 of 2022, totaling $10,839.15. Based on this income, [Schulmeyer] was able to establish a benefit year under Sections 27, 32 and 46 of the [Michigan Employment Security Act, MCL 421.1 *et seq*. (MESA)]; he had earnings in at least two quarters, wages were at least $3,830.00 in the highest quarter, and total wages of the entire four quarters were at least 1.5 times the gross wages paid in the highest quarter.

The UIA appealed the ALJ's opinion and order to the UIAC, arguing that the ALJ had incorrectly included wages paid in the second quarter (Q2) of 2022 when determining Schulmeyer's wages for the first quarter (Q1) of 2022 and had included wages paid in the third quarter (Q3) of 2022 when calculating Schulmeyer's wages for Q2 of 2022. The UIA contended that the ALJ erred by considering wages outside of Schulmeyer's base period to determine his eligibility. The UIAC, however, affirmed the ALJ decision and denied the UIA's request for rehearing. Subsequently, the UIA appealed to the circuit court, which affirmed the UIAC decision. This appeal follows.

## II.  PRINCIPLES OF STATUTORY INTERPRETATION

Resolution of the issues raised on appeal requires that we engage in the relevant statutes' interpretation.  In *Wayne Co v AFSCME Local 3317*, 325 Mich App 614, 633-634; 928 NW2d 709 (2018), this Court recited the following well-established rules of statutory interpretation:

> The primary task in construing a statute is to discern and give effect to the Legislature's intent, and in doing so, we start with an examination of the language of the statute, which constitutes the most reliable evidence of legislative intent. When the language of a statutory provision is unambiguous, we must conclude that the Legislature intended the meaning that was clearly expressed, requiring enforcement of the statute as written, without any additional judicial construction. Only when an ambiguity in a statute exists may a court go beyond the statute's words to ascertain legislative intent.  We must give effect to every word, phrase, and clause in a statute, avoiding a construction that would render any part of the statute nugatory or surplusage. [Quotation marks and citations omitted.]

Although this Court respectfully considers an agency's interpretation of a statute that it administers, such an interpretation is "not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *In re Complaint of Rovas*, 482 Mich 90, 103; 754 NW2d 259 (2008).  Thus, the language of a statute—not an agency's interpretation of it—must ultimately control.  *Id*. at 108.  Moreover, although the MESA is a remedial statute that should be liberally construed to achieve its goal of lightening "the burden of economic insecurity on those who become unemployed through no fault of their own," *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 414; 565 NW2d 844 (1997), in cases where a statutory provision is unambiguous, "it needs no construction, liberal or otherwise, to determine its meaning," *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 505; 844 NW2d 470 (2014).  Stated differently, judicial construction of clear and unambiguous statutory language is neither necessary nor permitted.  *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

## III.  AUTHORITY TO SEEK JUDICIAL REVIEW

We first address Schulmeyer's claim that the UIA lacks the authority to seek judicial review of final determinations of the UIAC.[3]  Section 34 of the MESA provides in relevant part:

---

[3] The UIA asserts that this issue is outside the scope of this appeal and so should not be considered by this Court.  We disagree.  Generally, an appellee is limited to the issues raised by the appellant unless the appellee cross-appeals.  See MCR 7.207.  However, an appellee may urge affirmance on alternative grounds without first filing a cross appeal so long as the appellee does not seek to "obtain a decision more favorable than was rendered by" the lower court.  *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994).  Because a determination by this Court that the UIA lacks the authority to seek judicial review would not enhance the decision of the trial court, Schulmeyer did not need to file a cross-appeal to assert the argument.

(2) An appeal to the [UIAC] from the findings of fact and decision of the administrative law judge or from a denial by the administrative law judge of a motion for a rehearing or reopening shall be a matter of right by an interested party.

* * *

(3) The agency is an interested party in a matter before an administrative law judge, the [UIAC], or a court, but notice of hearing is not required to be provided to the agency for a hearing before an administrative law judge or [UIAC].

* * *

(7) . . . Unless an interested party, within 30 days after mailing of a copy of a decision of the [UIAC] or of a denial of a motion for a rehearing, files an appeal from the decision or denial, or seeks judicial review as provided in section 38, the decision shall be final. [MCL 421.34.]

Based upon the plain language of MCL 421.34, it is clear that the Legislature has afforded the UIA a right to seek judicial review of UIAC decisions. Specifically, MCL 421.34(3) states that the UIA "is an interested party in a matter before an administrative law judge, the [UIAC], or a court . . . ." And MCL 421.34(7) expressly provides that decisions of the UIAC are final unless an "interested party," "within 30 days after mailing of a copy of a decision of the [UIAC] or of a denial of a motion for a rehearing, files an appeal[4] from the decision or denial, or seeks judicial review as provided in" MCL 421.38. Given that the UIA is statutorily defined as an interested party in matters before "a court" and given that subdivision 7 expressly provides that the UIAC's decisions are final after 30 days unless an interested party seeks judicial review, it is clear that the UIA has the authority to seek judicial review of UIAC decisions.

The only limitation upon the ability of an interested party to seek judicial review is that it must be conducted as provided in MCL 421.38. In relevant part, MCL 421.38 provides that "[t]he circuit court in the county in which the claimant resides or the circuit court in the county in which the claimant's place of employment is or was located, or, if a claimant is not a party to the case, the circuit court in the county in which the employer's principal place of business in this state is located, may review questions of fact and law on the record made before the administrative law judge and the [UIAC] involved in a final order or decision of the [UIAC] . . . ." MCL 421.38 contains no language expressly prohibiting the UIA from appealing a UIAC decision. Rather, it sets forth limitations relating to the proper venue for the filing of an appeal. If the Legislature intended that the UIA not be permitted judicial review, then it could have included language in MCL 421.34(7) stating that any interested party, except the UIA, could appeal the decision to the circuit court within the 30-day limitations period. Given that no such limitation has been set forth in the plain language of the statute, this Court should not read such a limitation into the statute. See *Evans v Hebert*, 203 Mich App 392, 404; 513 NW2d 164 (1994).

---

[4] In its statutory context, this use of the word "appeal" appears to refer to an appeal to the UIAC itself, as contrasted with the seeking of judicial review.

On appeal, Schulmeyer notes that MCL 421.34(2) expressly provides that an appeal to the UIAC "shall be a matter of right by an interested party." He suggests that, as a result, the Legislature's failure to specify that interested parties have an appeal as a matter of right before a circuit court can only mean that such a right does not exist. His interpretation, however, requires that this Court ignore that the Legislature, in MCL 421.34(7) expressly provides that interested parties must seek judicial review within 30 days or the decision of the UIAC will become final. Because such a right to judicial review is conferred, albeit using different language, by MCL 421.34(7), Schulmeyer's interpretation is not persuasive.[5]

## IV. REVIEW OF UIAC'S DECISION

### A. PRESERVATION

Schulmeyer argues that the UIA waived its right to challenge the UIAC's decision because it did not attend the hearing held before the ALJ. We disagree.

The UIA is not statutorily required to attend hearings before an ALJ. Instead, MCL 421.33 provides that an ALJ must "afford all interested parties a reasonable opportunity for a fair hearing." It further provides that if the appellant fails to appear or prosecute the appeal, then the proceedings may be dismissed. MCL 421.33. There is no language indicating that if the appellee fails to appear or defend its position that a default will be entered against the appellee that will preclude the appellee from challenging the factual findings or legal conclusions of the ALJ. Accordingly, we will not read such a requirement into the statute. See *Evans*, 203 Mich App at 404. Moreover, under the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) the fact that the Legislature expressly authorizes dismissal based upon the *appellant's* failure to appear, but is silent as to the effect of the appellee's failure to appear, indicates that the appellee's failure to appear does not subject the matter to dismissal. See *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 456; 770 NW2d 117 (2009). Indeed, MCL 421.33(2) provides that an interested party "may file an appeal" to the UIAC. There is no language limiting the right to appeal to interested parties that attended the hearing before the ALJ. Accordingly, in light of the plain language of MCL 421.33, there is no basis upon which to conclude that the mere failure to attend a hearing before the ALJ will result in the UIA being precluded from challenging the factual findings and legal conclusions of the ALJ.

Moreover, the issue regarding the proper interpretation of the MESA was raised by the UIA during the administrative proceedings and in the proceedings before the circuit court. Generally, an issue is properly preserved for appellate review if it is raised before and addressed and decided by the trial court or administrative tribunal. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Accordingly, given that the same challenge has

---

[5] Given our determination that the UIA is afforded the right to a judicial review of the UIAC's decisions under MCL 421.34(7), we need not address Schulmeyer's contention that no right to judicial review exists under the Administrative Procedures Act (APA), MCL 24.301 *et seq., or* the Revised Judicature Act (RJA), MCL 600.631 *et seq*.

been raised during the administrative proceeding and in the circuit court, this issue has been preserved for appellate review.

## B. STANDARD OF REVIEW

A circuit court conducting a direct review of an administrative decision must decide whether the action was authorized by law and whether the decision was supported by competent, material, and substantial evidence on the record. Const 1963, art 6, § 28; MCL 421.38(1); *Motycka v General Motors Corp*, 257 Mich App 578, 580-581; 669 NW2d 292 (2003). "Substantial evidence is evidence that reasonable persons would accept as sufficient proof to support a decision." *Id.* "[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Id.* A decision is "subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 432; 906 NW2d 482 (2017) (quotation marks and citation omitted).

## C. ANALYSIS

In order to be monetarily eligible to receive unemployment benefits, a claimant must establish a "benefit year" under MCL 421.46. A "benefit year" is defined as "the period of 52 consecutive calendar weeks beginning the first calendar week in which an individual files a claim in accordance with section 32," and there are two ways for a claimant to establish it. MCL 421.46(b). The method stated in MCL 421.46(b)(1) is relevant to this case. Under that provision, establishment of a benefit year requires that:

> [t]he total wages *paid* to the individual in the base period of the claim equals not less than 1.5 times the wages *paid* to the individual in the calendar quarter of the base period in which the individual was paid the highest wages. [Emphasis added.]

Further, under MCL 421.46(c), "[a] benefit year shall not be established if the individual was not *paid* wages of at least the state minimum hourly wage multiplied by 388.06 rounded down to the nearest dollar in at least 1 calendar quarter of the base period." (Emphasis added). Critically, MCL 421.46(b)(1) and MCL 421.46(c) specifies that the formula for establishing a benefit year requires a determination of the wages *paid* to the individual. Thus, an interpretation of MCL 421.46(b) that considers the total wages *earned* is contrary to the plain language of the statute.

Although Schulmeyer directs this Court to the UIA website, which appears to use the terms "paid" and "earned" interchangeably, this Court is not permitted to look beyond the plain language of an unambiguous statute when interpreting it. *AFP Specialties, Inc*, 303 Mich App at 505. Rather, when statutory language is clear and unambiguous, this Court must apply it as written. *Sun Valley Foods Co*, 460 Mich at 236. Thus, regardless of how the UIA website uses the terms "paid" and "earned," the statutory formula for establishing a benefit year looks to when wages were paid, not when they were earned.

In this case, Schulmeyer filed his claim for unemployment on July 18, 2022. As a result, his five-calendar quarter "base period" was Q2 of 2021, Q3, of 2021, Q4 of 2021, Q1 of 2022, and

Q2 of 2022. See MCL 421.45 (defining "base period."). The record reflects that he had no wages in Q2 of 2021, Q3 of 2021, Q4 of 2021. Accordingly, his monetary eligibility depended upon his wages from Q1 and Q2 of 2022.

The ALJ determined that his wages for the Q1 of 2022 was $3,522.89. In doing so, it considered a paystub showing that Schulmeyer received a check on April 1, 2022 for $386.27 for the pay period of 3/20/22 to 3/26/22.[6] It is undisputed that the pay period falls within Q1 of 2022, but the date that the check was issued falls within Q2 of 2022. Because MCL 421.46 requires that the wages be *paid* in a quarter in order to be counted, the ALJ made an error of law by including the April 1, 2022 check in its determination of the wages paid to Schulmeyer in Q1 of 2022.

Next, the ALJ determined that Schulmeyer's wages for Q2 of 2022 were $7,582.55. In doing so, the ALJ relied upon a paystub showing that Schulmeyer received a check on July 1, 2022 for $329.40 for the pay period of 6/19/22 to 6/25/22. It is undisputed that the pay period falls within Q2 of 2022, but the date that the check was issued paid falls within Q3 of 2022. Again, MCL 421.46(b)(1) requires that the wages be paid in a quarter in order to be counted. As a result, by including the July 1, 2022 check in its calculation of the wages paid in Q2 of 2022, the ALJ made an error of law.

When Schulmeyer's wages are considered in the quarters in which they were paid rather than the quarters in which they were earned, the total wages paid in Q1 of 2022 were $3,136.62[7] and the total wages in Q2 of 2022 were $7,253.15.[8] That means that the total amount of wages paid in Schulmeyer's base period equaled $10,389.77. Under MCL 421.46(b)(1), Schulmeyer cannot establish a benefit year because $10,389.77 is less than 1.5 times $7,253.15. Because Schulmeyer's wage history cannot establish a benefit year, he is not monetarily eligible for unemployment benefits.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado

---

[6] This paystub reflects gross pay of $509.92.

[7] Based upon Schulmeyer's April 1, 2022 paystub this Court can determine the wages that were paid to Schulmeyer in Q1 of 2022. This Court must subtract $506.92 in wages paid in Q2 of 2022 from the $3,643.54 in year-to-date (YTD) wages reflected on the paystub. That results in a sum of $3,136.62 being paid in wages in Q1 of 2022.

[8] This is calculated based upon the sum total of Schulmeyer's gross pay as reflected on paystubs submitted to the ALJ for the following dates: April 1, 2022, April 8, 2022, April 15, 2022, April 22, 2022, April 29, 2022, May 6, 2022, May 13, 2022, May 20, 2022, May 27, 2022, June 3, 2022, June 10, 2022, June 17, 2022, and June 24, 2022. Because Schulmeyer's July 1, 2022 paystub reflects that he was paid on July 1, 2022, which is in Q3 of 2022, that payment is not included in the calculation.